UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

HENRY A. HALL, Prisoner No. 229443 )
)
v. ) NO. 2:07-CV-127
)
ESCO JARRIGAN,[1] RON (ROOKIE) )
INMAN; SCOTT PERKY, GEORGE )
SAUSEMAN, and MEDICAL )

## MEMORANDUM and ORDER

Acting *pro se*, Henry A. Hall, a state prisoner formerly housed in the Hamblen County Detention Center, brings this civil rights action for injunctive and monetary relief under 42 U.S.C. § 1983. Plaintiff's application to proceed *in forma pauperis* is **GRANTED** (Doc. 1), and he is **ASSESSED** the full filing fee of three hundred, fifty dollars ($350.00). 28 U.S.C. § 1914(a).

The custodian of plaintiff's inmate trust account at the institution where he now resides shall submit, as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A) and (B).

Thereafter, the custodian shall submit twenty percent (20%) of plaintiff's preceding monthly income (or income credited to his trust account for the preceding month), but only when

---

[1] The lead defendant's last name was spelled "J*e*rrigan" in the caption of complaint, but plaintiff has since notified the Court that the correct spelling is "J*a*rrigan."

1

such monthly income exceeds $10.00, until the full filing fee of $350.00 has been paid to the Clerk's Office.[2] *McGore v. Wrigglesworth*, 114 F.3d 601, 607 (6th Cir. 1997).

To ensure compliance with the fee-collection procedure, the Clerk is **DIRECTED** to mail a copy of this memorandum and order to the custodian of inmate accounts at the institution where plaintiff is now confined and to George Little, Commissioner of the Tennessee Department of Correction.

## II. **Plaintiff's Allegations**

The complaint contains various contentions concerning the conditions and treatment to which plaintiff was subjected during his confinement in the Hamblen County jail. The Court has renumbered the claims for ease of discussion.

(1) In the first claim, plaintiff alleges that, after two large boils flared up under his left arm, he turned in a medical request, waited a short time for a response, filed a grievance complaining of the situation, and five days later, saw the nurse who lanced the boils and gave him antibiotics. He then complained of ear problems, but was told that he would be checked later and was returned to his cell. Upon his return, he asked two inmates to look at his ears. They did so and extracted a roach from his right ear. Plaintiff filed requests and grievances but received no response and now suffers from hearing loss in his right ear.

On April 26, 2007, plaintiff, having again turned in a medical request form, asked defendant Scott Perky to see the nurse. Defendant Perky replied, "We're too busy right now."

---

[2] Send the payments to:
          Clerk, USDC
          220 West Depot Street, Suite 200
          Greeneville, TN 37743

Plaintiff filed another request and a grievance and, the next day, he showed his arm to defendant George Sauseman. Defendant Sauseman commented, "I'll tell her [the nurse?] it's bad." On April 28, 2007, he again showed his arm to the same defendant and this time defendant responded by taking plaintiff to the medical unit. The medical care provider looked at the sores on plaintiff's arm and said, "I will call you out in the morning probaly (sic) lance them open." The next day, plaintiff informed defendant Sauseman that "the sores hurt bad," but defendant retorted, "We're busy."

On April 30, 2007, the head nurse came to plaintiff's cell, checked his arm and, though she asked "Didn't the weekend nurse do nothing (sic)?", she did not address the problem either. Two days later, the nurse sent word to plaintiff that she had gotten busy the day before, but would try to get to him that day. However, at 12:00 noon, the United States Marshals transported plaintiff to the Greene County jail. During a physical examination on May 3, 2007, he was diagnosed as having a staph infection in his arm [which by this time, displayed several boils] and was given medication immediately. Plaintiff contends that, as a result of the lack of medical care, he sustained unnecessary pain for at least fourteen days and now has limited use of his left arm.

(2) Plaintiff's next claim involves personal hygiene. This particular claim, it must be noted at the beginning, contains inconsistent allegations. Plaintiff asserts, on the one hand, that inmates receive a razor once a week and must use the same razor four times and, on the other hand, that razors are only changed once every 28 days. The Court is perplexed as to how razors could be received once a week and at the same time be changed every four weeks.

Plaintiff also asserts in an auxiliary claim that once, when his razor had rust on it, he asked for a new one but was told to use the one he had because defendant Ron (Rookie) Inman had not provided for replacement razors.

(3) The third claim is that the mops used in three cell blocks are also used to clean the showers and that the broom plaintiff used to sweep his cell contained semen and pubic hair. Plaintiff complained about the broom, but defendant Sauseman said, "If you sweep out your cell, you'll use that one."

(4) Inmates James Stout and George Simpson are permitted to pass out the mail. Plaintiff's niece sent him a letter containing stamps, which he never received. Instead, plaintiff found it in the trash can with the stamps missing. Since that time, his niece has received obscene letters from someone at the jail.

The remaining claims are asserted in plaintiff's amended complaint.

(5) Plaintiff had to clean, sweep, and mop his cell with the same broom and mop previously used to clean up a sewer back-up in the shower. Plaintiff is forced to sleep on that same floor.

(6) The jail authorities will not issue the "floor man" sanitary gloves though he serves drinks after each meal. On July 20, 2007, he stuck his finger in the spout of the cooler to stop the flow of plaintiff's drink. After serving dinner, inmates are allowed to bring the same coolers that contained the drinks into their cells and to stick their hands in the coolers to scoop up ice. Plaintiff filed a complaint about the way the coolers are used but received no response.

(7) Plaintiff's eyesight has gotten worse because of the inadequate lighting in the jail. He cannot see plainly at close range and now must wear glasses in order to read and write.

(8) The final claim is that plaintiff complained of a sore throat to the nurse during his intake physical [presumably, at the Greene County Detention Center, where he was confined when he filed this lawsuit]. Thereafter, he filed a medical request to see the doctor and, though five

days have passed, he has yet to receive a response.

The Court infers that the plaintiff is contending in his pleadings that he has been and continues to be denied medical care and to be exposed to wrongful housing conditions, in violation of the Eighth Amendment to the United States Constitution.

The complaint now must be screened to determine whether it should be dismissed as frivolous, malicious or for failure to state a claim or whether monetary damages are sought from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) and § 1915A.

At the outset, to the extent that the pleadings can be read as asserting that the rights of other inmates are being infringed, since they too are subject to the complained of conditions, any such claim fails. Plaintiff has standing to assert his own rights, not those of other inmates. *Whitmore v. Arkansas*, 495 U.S. 149 (1990).

Secondly, plaintiff has made no allegations whatsoever against Esco Jarrigan. Without some indication of wrongful conduct on the part of this defendant, plaintiff fails to state a claim against defendant Jarrigan.

Thirdly, a prisoner's request for injunctive or declaratory relief against jail officials cannot be granted once he is transferred from the correctional institution of which he complains to a different facility. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). This is what has happened here. Plaintiff has notified the Court that he has been transferred to the Blount County, Tennessee jail and this change of address renders **MOOT** his claims for injunctive relief.

The remaining claims have been divided into three categories to facilitate discussion.

A. Medical Claims [Nos. 1 and 8].

These claims are governed by *Estelle v. Gamble*, 429 U.S. 97 (1976), which holds

5

that the Eighth Amendment is violated when prison authorities are deliberately indifferent to the serious medical needs of prisoners. An Eighth Amendment claim has both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires the plaintiff to show a "sufficiently serious" deprivation. *Id.* A medical need may be objectively serious if even a lay person would recognize the seriousness of the need for medical care. *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (citing *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). The subjective component requires a showing of a sufficiently culpable state of mind—one of deliberate indifference. *Farmer*, 511 U.S. at 842. Deliberate indifference is illustrated by a prison official who acts or fails to act despite knowledge of a substantial risk of serious harm to the inmate. *Id.* A prisoner may also show that he had a serious medical need by showing that a delay in treatment had a detrimental effect on a non-obvious condition that was sufficiently serious as to rise to the level of a constitutional violation. *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

   The claim concerning the initial delay in obtaining medical care for the boils under his arm does not state a claim for relief. There is nothing to show that this condition was sufficiently grave, that the delay was detrimental, or that any defendant acted with the requisite state of mind. By plaintiff's own allegations, the nurse treated his boils by lancing them and by providing him with antibiotics. A prison official's actions must be more than mere negligence, and if the official took reasonable measures to abate the harm, he will not be held liable, even if the harm was not ultimately averted. *Farmer*, 511 U.S. at 835-36. Having failed to show either of the elements in *Estelle*, plaintiff has failed to establish any entitlement to relief.

   On its face, the allegations that plaintiff's complaint of an ear problem was ignored,

6

Case 2:07-cv-00127   Document 8   Filed 12/18/08   Page 6 of 12   PageID #: 10

that a roach was extracted from his right ear soon thereafter, and that he has suffered hearing loss in his right ear states a colorable constitutional claim. This claim will be allowed to advance, as will the claim involving the painful boils [later diagnosed as a staph infection] on plaintiff's arm for which he contends he was denied medical care from April 26- May 2, 2007.

The allegation that plaintiff complained of a sore throat during his intake physical and did not receive medical care within five days [Claim eight] is a nonstarter. The Eighth Amendment requires a serious medical need and a mere complaint of a sore throat, without anything more, does not meet the objective requirement of a serious medical condition. Nor has there been any demonstration of deliberate indifference on the part of a defendant.

B. <u>Unconstitutional Confinement Conditions [Nos. 2-7].</u>

As discussed earlier, the Eighth Amendment is implicated when a prison official is deliberately indifferent to a living condition which poses a substantial risk of serious harm to the inmate.

Plaintiff's claim that he once had to use a rusty razor and was denied a replacement [Claim two] is not a viable constitutional claim because the Eighth Amendment prohibits only *extreme* deprivations and because this is not such a deprivation. Nor is there any constitutional rule regarding the frequency with which razors must be changed. And too, plaintiff's allegation that defendant Ron (Rookie) Inman had not provided for replacement razors would be characterized, at best, as an act of negligence and not one of deliberate indifference to a substantial risk of serious injury. Given that there are no other allegations against this defendant, he too is **DISMISSED** from this suit.

Two claims [Claims three and five] involve the failure to furnish a clean mop and

7

broom. Prison officials must supply an inmate's basic needs, including reasonable sanitation, as feasible. *Walker v. Mintzes*, 771 F.2d 920, 926 (6th Cir. 1985). *See also Tillery v. Owens*, 907 F.2d 418, (3rd Cir. 1990) ("Although prisoners are, undeniably, sent to prison as punishment, the prison environment itself may not be so brutal or unhealthy as to be itself a punishment"); *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989) (noting that prison authorities must "provide inmates with a minima of ... sanitation").

According to the Supreme Court, determining whether a condition meets the objective factor of the Eighth Amendment test

> requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

*Helling v. McKinney*, 509 U.S. 25, 36 (1993). Though a new [or at least unsoiled] mop and broom might have been desirable under the described circumstances, the evaluation of a challenged condition may not be grounded upon this Court's "idea of how best to operate a detention facility." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

As the Seventh Circuit has noted, "[m]any Americans live under conditions of exposure to various contaminants. The Eighth Amendment does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans." *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001). As it stands, it simply cannot be said that the failure to issue a different mop and broom to plaintiff violates contemporary standards of decency nor that society is unwilling to tolerate the use of a dirty broom and mop by an inmate, especially when the problem so easily can be rectified with soap and water.

8

Notably, plaintiff has not indicated that he was denied access to soap, water, or cleaning supplies.

The claim that the prisoner who serves drinks is denied sanitary gloves [Claim six] also relates to sanitation since inmates must be supplied food and drink prepared and served under reasonably sanitary conditions. The use of plastic gloves by food servers is desirable, but the authorities' mere failure to supply them, absent some indication that the food or drink itself is unsanitary or that the server has a medical condition which poses a risk of harm to inmates who consume the food and drinks, does not state a constitutional claim. *See Carmony v. County of Sacramento*, 2008 WL 435343, *11 (E.D.Cal. Feb. 14, 2008); *Jackson v. St. Clair County Jail*, 2005 WL 1827873, *4 (S.D. Ill. Aug. 2, 2005) (allegation that inmate food servers do not wear gloves while handling food, absent an indication of physical injury, fails to state a constitutional claim); *Tapia v. Sheahan*, 1998 WL 919709, *5 (N.D. Ill. Dec. 30, 1998) (contention that food servers fail to wear gloves or hairnets fails to state a claim). Identical reasoning applies to plaintiff's assertion that inmates use their hands to scoop up ice from coolers from which drinks are dispensed.

Plaintiff's next claim [Claim seven] is a blanket allegation that, due to inadequate lighting in his cell, his eyesight has deteriorated to the point that he must wear glasses to read and write and cannot see plainly at close range. Contemporary standards of decency require that prisoners be furnished with shelter, *Helling*, 509 U.S. at 32, and one court has held that "[a]dequate lighting is one of the fundamental attributes of adequate shelter required by the Eighth Amendment." *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996) (citation and internal punctuation marks omitted), *amended by* 135 F.3d 1318 (9th Cir. 1998). To reiterate the showing plaintiff must make to prevail on a claim of inhumane housing conditions, he must establish that the questioned condition posed an excessive risk to his health or safety to which a defendant was deliberately

Case 2:07-cv-00127   Document 8   Filed 12/18/08   Page 9 of 12   PageID #: 13

indifferent. *Farmer*, 511 U.S. 834, 842.

While plaintiff contends that the lighting is "pour," he has made no effort to describe the nature of the inadequacy. It is difficult, if not impossible, given the dearth of factual support, to conclude that the bad lighting rises to the level of a sufficiently grave deprivation so as to meet the objective element of an Eighth Amendment claim. Even if one were to assume that a bald allegation of poor lighting is a sufficiently serious deprivation for Eighth Amendment purposes, the face of the complaint does not contain any evidence of deliberate indifference. *Farmer*, 511 U.S. 838 (explaining that liability does not attach "solely because of the presence of objectively inhumane prison conditions") (citing to *Wilson*, 501 U.S., at 299-302). There is no indication in the pleadings that the defendants actually knew of but disregarded the purported lighting problem. *See Farmer*, 511 U.S. at 837 (deliberate indifference shown where official is aware of facts from which to infer that a substantial risk of serious harm exists *and* where he actually draws the inference). Logically, a defendant who has no knowledge of a condition cannot consciously disregard any attendant risk of serious harm to an inmate's health or safety.

C. <u>Mail Interference [No. 7]</u>.

The final claim involves an alleged purloined letter. These are the facts which are offered. Plaintiff asserts that two inmates are allowed to pass out the prisoners' mail, that he did not receive a letter containing stamps which was sent to him by his niece, that he found the letter in a trash can later, that the stamps were missing, and that his niece has been receiving obscene letters from someone at the jail.

To state a claim under 42 U.S.C. § 1983, plaintiff must show: (1) that he was deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States

of America and (2) that the deprivation was caused by a person acting under the color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 1`49, 155 (1978). Even if plaintiff could somehow show that the two inmates who passed out the mail were acting under color of state law in performing this task and also that they were the parties who were responsible for failing to deliver his letter, he still would not have an actionable claim under § 1983. This is so because negligence is not a valid theory of recovery under the civil rights statute. *Daniels v. Williams*, 474 U.S. 327, 328 (1986). By the same token, if the failure to deliver his mail/stamps was an intentional act and if plaintiff is claiming a property deprivation without due process of law, he would have a valid claim only if he pled and proved that state remedies for redressing the wrongful act were wanting. *Hudson v. Palmer*, 468 U.S. 517, 533-36 (1984). He has not so done. The same analysis applies to the missing stamps. Moreover, even if he could overcome all these barriers to his mail claims, the individuals who supposedly engaged in the wrongful conduct have not been named as defendants in this lawsuit.

Finally, as previously noted, plaintiff must assert his own rights and not the rights of others. He, therefore, lacks constitutional standing to advance the claim regarding his niece's receipt of obscene letters from someone at the jail.

In accordance with the above discussion, all claims save the medical claims are **DISMISSED**. Because plaintiff has stated an arguable claim for the denial of medical care against defendants Perky and Sauseman, the Clerk is **DIRECTED** to send him two service packets.[3] (Each contains a blank summons and USM 285 form.) Plaintiff is **ORDERED** to complete the service

---

[3] Defendant "Medical" is insufficiently identified for purposes of effecting service. When and if plaintiff timely amends his complaint to provide the name of this defendant, he will be sent another service packet for that individual.

11

packets and to return them to the Clerk's office within twenty (20) days of the date on this Order. Plaintiff is forewarned that failure to return the completed service packets within the time required could jeopardize his prosecution of this action.

When the completed service packets are received by the Clerk, the summonses will be signed and sealed by the Clerk and forwarded to the United States Marshal for service upon defendants. Defendants are **ORDERED** to respond to the complaint in the manner and within the time required by the Federal Rules of Civil Procedure. Plaintiff is **ORDERED** to inform the Court of any address change within ten (10) days following such change. He is further cautioned that his failure to do so will result in a dismissal of this action for failure to prosecute.

**ENTER**:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE